IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CR-34-FL-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | ORDER |
| ALEXIS P. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

On April 5, 2016, defendant was charged in a single-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. This matter comes now before the court on defendant's motion to suppress. (DE 43). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Robert T. Numbers, II, issued a memorandum and recommendation ("M&R") after evidentiary hearing, wherein it is recommended that this court grant defendant's motion. (DE 54). The government timely filed objections to the M&R. (DE 59). Defendant did not respond, and the time for doing so has passed. In this posture, issues raised are ripe for ruling. For reasons that follow, defendant's motion to suppress is denied.

**BACKGROUND**

Defendant seeks to suppress all evidence derived or flowing from the February 24, 2016, warrantless search of his Lumberton, North Carolina residence as a part of "Operation Zero Hour."[1] Defendant contends that the search was unlawful under North Carolina law and in violation of his Fourth Amendment rights. Certain background facts pertinent to the instant motion and

---

[1] Operation Zero Hour was, as presented, an extensive operation involving 180 law enforcement officers from 21 agencies in and around Robeson County, North Carolina, where Lumberton is situated, conducted between February 23, 2016 and February 25, 2016.

summarized in the M&R, are repeated below:

> In August 2015, Smith began a period of post-release supervision after serving time in prison for a probation violation. As part of his supervision, Smith agreed to abide by numerous conditions, including the condition that he would "submit at reasonable times to searches of [his] person, premises, or any vehicle under [his] control by [his] supervising officer for purposes reasonably related to [his] supervision." Post-Release Supervision Order at 5, D.E. 43-2. The [North Carolina Post-Release Supervision and Parole Commission] indicated that it imposed the conditions on Smith "after careful study and consideration in accordance with North Carolina General Statute § 15A-1368.4."[2] Supervision Order at 3.
>
> Upon his release from prison, the Commission assigned Christopher Cook to supervise Smith. Tr. at 15:3-25, 16:8-10. About three months later, Patrick Oxendine took responsibility for Smith's supervision and remained in this role throughout the events at issue in this motion. Tr. at 16:1-7.
>
> In late February 2016, the North Carolina Department of Public Safety, in conjunction with other law enforcement agencies, launched Operation Zero Hour. Tr. at 16:11-16, 22:20-22. As part of this operation, supervision officers and law enforcement officers conducted warrantless searches and served outstanding arrest warrants throughout Robeson County. Tr. at 16:15-22.
>
> Cook decided to search Smith's home because "he was considered a high risk supervision case." Tr. at 17:1-4. Additionally, officers obtained information that Smith was selling drugs and knew that he had tested positive for using multiple drugs. Tr. at 17:4-8. All of this information caused Cook to believe that Smith was involved in the sale of illegal narcotics. Tr. at 17:9-10.
>
> Cook and five other law enforcement officers – two DPS officers and three local law enforcement officers – arrived at Smith's home at approximately 6:25 a.m. on February 24, 2016. Tr. at 17:13-18, 18:18-20. After learning that Smith was not there, Cook called and told him that he needed to come home so that the officers could conduct a search. Tr. at 17:17-23.
>
> Smith arrived home approximately 15 minutes later. Tr. at 16:24-17:4. Cook informed him that the officers were there to perform a search of his residence, as allowed by his post-release supervision order. Tr. at 19:3-9. Smith then led the officers to his bedroom and unlocked his bedroom door. Tr. at 16:24-17:4. A search of the bedroom uncovered two loaded firearms and marijuana. Tr. at 18:4-8.

---

[2] While Smith agreed to the conditions, he is prohibited by law from refusing to do so. N.C. Gen. Stat. § 15A-1368.2(b).

> Later that day, representatives of the Robeson County Sheriff's Office and the Bureau of Alcohol Tobacco and Firearms interviewed Smith at his home. Resp. to Mot. to Suppress ¶ 7, D.E. 47. After waiving his *Miranda* rights in writing, Smith admitted that the firearms and marijuana found in his bedroom were, in fact, his. *Id.* Smith also admitted that he was aware that he was prohibited from possessing a firearm. *Id.*

See M&R (DE 54) at 2-3.

The magistrate judge determined that the warrantless search of defendant's home was unreasonable under the Fourth Amendment because it was instigated and participated in by Christopher Cook ("Cook"), defendant's former post-release supervising officer, and not Patrick Oxendine ("Oxendine"), his then current supervising officer, in contravention of conditions set by the North Carolina Post-Release Supervision and Parole Commission ("Commission") and memorialized by agreement of defendant. That agreement provided in part that defendant would "[s]ubmit at reasonable times to searches of my person, premises, or any vehicle under my control by my supervising officer for purposes reasonably related to my supervision." Post-Release Supervision Order (DE 43-2) at 5 (emphasis added).

## DISCUSSION

Defendant's motion presents the issue of whether, in light of his post-release supervision conditions, the Fourth Amendment allows any supervising officer to conduct a warrantless, suspicionless search of defendant's residence, or whether it has to be his assigned supervising officer, in this case Oxendine.

The Supreme Court has upheld warrantless searches of individuals on probation or parole in several instances. See Samson v. California, 547 U.S. 843, 857 (2006) (upholding the warrantless search of a parolee in the absence of reasonable suspicion); United States v. Knights, 534 U.S. 112,

122 (2001) (holding that a probationer's warrantless search was "reasonable" under the Fourth Amendment because 1) the search was supported by reasonable suspicion; and 2) the search was authorized by a condition of probation); Griffin v. Wisconsin, 483 U.S. 868, 880 (1987) (holding that a probationer's warrantless search was "reasonable" under the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers). In accord, the Fourth Circuit Court of Appeals has upheld the warrantless search of a probationer's person, vehicle, and home. See United States v. Midgette, 478 F.3d 616, 624 (4th Cir. 2007) (holding that warrantless probation searches, conducted in conformity with N.C. Gen. Stat. § 15A-1343(b)(13), are reasonable under the Fourth Amendment).

Whether in lieu of "my" supervising officer, another officer, as here, lawfully may undertake a warrantless search has not specifically been addressed by the Fourth Circuit Court of Appeals. The undersigned finds for reasons discussed below that a search by a post-release supervising officer other than the assigned supervising officer, under the facts and circumstances presented, is reasonable under the Fourth Amendment.

Post-release supervision is governed by Article 84A of the North Carolina General Statutes, N.C. Gen. Stat. § 15A-1368 et seq. The specific conditions of post-release supervision are set forth in N.C. Gen. Stat. § 15A-1368.4. Pursuant to § 15A-1368.4(e)(10), a post-release supervisee must "[s]ubmit at reasonable times to searches of the supervisee's person by a post-release supervision officer for purposes reasonably related to the post-release supervision." Therefore, the three requirements imposed on warrantless searches of post-release supervisees in North Carolina are: 1) the search must be conducted at a "reasonable time[]"; 2) the search must be conducted "by a post-release supervision officer"; and 3) the search must be conducted "for purposes reasonably

4

related to the post-release supervision."

No support appears within the ambit of that statute or among terms of the Post-Release Supervision Order for the proposition that a subject of supervision is relieved from searches or for that matter any other prescribed condition overseen by "my supervising officer" including alcohol or controlled substances tests, and curfew monitoring, when that officer is unavailable. A supervising officer may go on vacation, become ill, retire, be terminated, or take leave for a host of personal reasons. Defendant remains subject to the terms and conditions of supervision when these and other events result in the absence from duty of "my supervising officer."

At the evidentiary hearing before the magistrate judge, testimony was received from Jeff Sipes, chief probation and parole office for the North Carolina Department of Public Safety ("NCDPS"). In unrebutted testimony, Sipes explained the rationale for allowing a warrantless search by <u>any</u> supervising officer:

> Supervision is a team effort. Supervision has to occur by more than one person because offenders are 24-hour-a-day people just like everybody else. So when officers go out for extended leave, illness, vacation, things of that nature, other officers have to cover their responsibilities. When vacancies occur, other officers have to cover the cases that were originally assigned to the other officer.

Feb. 7, 2017 Tr. (DE 53) at 9:21-10:2. Defendant cannot reasonably expect that he was subject to warrantless searches by <u>only</u> one named supervising officer. In fact, the controlling conditions section of the form order, explicitly acknowledged by defendant, prescribes repeated involvement with "<u>a</u> post-release supervision officer," including with respect to home visits at reasonable times. Post-Release Supervision Order (DE 43-2) at 2, 4 (emphasis added). While the agreement portion of the order utilizes the adjective "my" with respect to some officer contacts including home searches, it reverts to "the supervising officer" with reference to the residence approval condition.

5

Argument that occasional use of the adjective "my" to describe contacts with a supervising representative of NCDPS creates an enhanced expectation of privacy with respect to those contacts is misplaced under these facts.[3]

United States v. Irons, No. 7:16CR00055-F-1, — F.Supp. 3d — , 2016 WL 7174648 (E.D.N.C. Dec. 7, 2016), a case referred to several times by the magistrate judge, certainly bears similarities to the instant case. Irons involved a supervisee in Robeson County caught up in Operation Zero Hour, complaining of the same provision at issue here, whose assigned supervising officer was not present at the search. Cook was present, together with another officer, during that search, too. Id.

According to his testimony at Smith's hearing, Cook arrived at defendant's residence around 6:25 a.m., at which time this defendant was not home. Feb. 7, 2017 Tr. (DE 53) at 17:17-18. At Cook's request, Smith returned to the residence, arriving at 6:41 a.m. when it was light outside, according to the testimony. Id. at 17:24-25. Cook testified explicitly about the connection between the search of this defendant's residence and the purposes therefore, reasonably related to supervision of this defendant.[4] Id. at 17:1-10.

Review of the record reveals defendant in Irons made the same argument as here, that only the assigned supervising officer can authorize and conduct a warrantless search. The court in Irons

---

[3] It is curious why the record does not include page six of the Post-Release Supervision Order, as page five concludes with the word "CONTINUED" typed at the bottom, and, too, that the order made a part of the record skips from page two to page four. See Post-Release Supervision Order (DE 43-2). Because neither side bases any argument on what appears to be missing portions of the Order, the court does not dwell on this.

[4] The record in that case is not, as here, developed with benefit of hearing.

declined even to address that issue.[5]

The law does not require what defendant urges, a result which seriously would undermine North Carolina's interest in administering its post-release supervision program. For similar conclusion in the context of probation, see United States v. Lynch, No. 5:17CR12-BO, 2017 WL 1319786 (E.D.N.C. Apr. 7, 2017), where the court noted that North Carolina law requires "a probation officer" to conduct a warrantless search. Id. at *4 (emphasis added). The court explained that "[t]o hold otherwise [that only the specific probation officer assigned to defendant be the one to conduct the search] would not serve North Carolina's legitimate interest in administering its probation system and would unnecessarily burden the efforts of probation officers, who generally supervise probationers as a group." Id.

## CONCLUSION

For all these many reasons, defendant's motion to suppress (DE 43) is DENIED.

SO ORDERED, this the 7th day of July, 2017.

LOUISE W. FLANAGAN
United States District Judge

---

[5] Decision rendered in Irons revolved around 1) time of the search, before the sun rose, between 6:00 a.m. and 6:15 a.m. which time found this defendant in bed, asleep, with his girlfriend, as not being a reasonable time; and 2) apparent disconnect between the search and any reason for that related to the defendant's supervision. 2016 WL 7174648 at *4.